Chancellor Harper
delivered the opinion of the Court.
The first ground of appeal relates to matters of fact, with respect to which we would very much incline to be governed by the *Chan- |-*ko0 cellor’s decision. Our own judgment on the evidence entirely L agrees with the Chancellor’s. The evidence is, that the defendant, Barelli, transacted not only the commercial business of Mrs. Messervey, but all her business affairs. The testimony of Mr. Shand shows distinctly that he did habitually consult her legal advisers, and that of course he transacted the business with the Commissioner ; and from her confidence in him, and the ascendancy which he seems to have obtained over her, the inference is hardly to be avoided, that he principally directed everything that was done. The evidence of the witnesses, Shirer and Wilkie, would only be important in considering whether the former decree and all the proceedings should not be set aside, as having been obtained by his fraud. And for this, I think there are strong grounds ; but the Chancellor has not come to this conclusion, nor in fact does the question appear to have been made before him, or by the bill.
With respect to the second ground of appeal, the confirmation of the Commissioner’s report, of his having paid to the plaintiff, Sophia C. Messervey, her share of the estate, was not an adjudication. When matters in issue are referred to the Master, and he reports upon them, and the report is confirmed, then the report is made the decree of the Court. But the fact of this payment was not referred to the Commissioner, or in any manner in issue. It was not a judicial, but an administrative order, which is always subject to the control of the Court — not intended to establish the fact of his having made the payment, but to approve of it if done, and to protect him in having made it. When a report of sales is made, can any one suppose that this is a judgment establishing the fact that the sales have been made ? It can at most amount to no more than the entry of satisfaction upon a judgment or decree, which the Court habitually vacates when it has been made by mistake, or there is any equity to require it. The payment was not in fact made. When we think of the relation in which the plaintiff then stood to the defendant, regarding him as her affianced husband, he must know very little of the *444 *581] female disposition, who does not know that she trusted everything with implicit confidence to his direction. He, on his part, assumed the character of a husband; he would of course assume to act for her, nor have I any doubt but that the report and order were made by his procurement and direction. Shall he be permitted to take advantage *of them ? He was her agent, and his act might have bound her as to third persons, but he cannot claim his own act as being conclusive between himself and his principal.
Third. — Mrs. Messervey was not the guardian. The order of the Court was, that she should be appointed guardian, upon giving bond with sufficient security. This was never done, nor does it appear that letters of guardianship were issued. She therefore had no authority to release the mortgage, even if it had come into her possession. But the mortgage comes before the Court from the possession of the Commissioner, Mr. Hunt, and though an assignment appears endorsed on it, yet if it was not delivered, (which is to be inferred,) the assignment could operate nothing.
Fourth. — The defendant, Mrs. Messervey is responsible, and will be made so by the decree. If the plaintiffs had lost their security by the misconduct of the officers of Court, they might be made responsible.— But if the security be not lost — if the property is still legally bound to satisfy their claims, certainly they are not bound to have recourse to the officers in the first instance.
Firth. — I suppose that the fifth ground refers to the Commissioner’s report, of his having paid over to Sophia C. Messervey her share of the proceeds of the estate, by which she is thought to have been precluded from claiming any thing now. But I have already disposed of that report. Her share of the credit part of the sales is included in the bond, and in fact, I 'suppose, though the records seem to bear a different meaning, that the Commissioner only intended to report, that he had paid over to her, her share of the cash proceeds of the sale.
The Chancellor, however, directs the property in the hands of the defendant, to be made liable for all that shall be found due to the plaintiffs, on account of their shares of the real estate, including as well the part that was said to be received in cash, as the amount of the bond. If it depended on the mortgage merely, it would not be liable beyond the amount of the bond. This renders it necessary to decide on the effect of the Act of 1191, directing that when land is sold for partition, it shall stand pledged for the purchase-money. The Act provides, that the party may apply at his option to the Court of Equity or Common Pleas, for a writ of partition ; directs the manner of proceedings, and enacts, that “ if *582] it shall appear to the Court, that it would be more for the *interest of the parties that the same should be sold, then they shall direct a sale to be made on such credit, and on such terms as to them shall seem right, and the property so sold, shall stand pledged for the payment of the purchase-money.” The Act then goes on to provide, “that the judges of the respective Courts shall be, and they are hereby authorized from time to time, to make such rules and orders as may be necessary for the purpose of carrying the foregoing clause into effect.” It was urged, that this does not apply to sales made by the Commissioner or master. But in every case in which land is sold for partition *445 under the authority of the Court of Equity, the sale is made by the Commissioner or master. I suppose it was intended that the act cannot apply when the sale is made on the recommendation of the Commissioner merely, no writ of partition having issued. But I do not perceive the grounds of this. The practice of making sales on the recommendation of the Commissioner, without the return of commissioners in partition, is one of doubtful propriety. Yet the act refers it to the Court, to determine on the expediency of a sale, and the Court of Equity would of course make the inquiry for this purpose through its accustomed officer. If there has been an irregularity in not having a previous return in partition, I do not perceive that this can deprive the parties of the benefit which the law expressly gives them.
As to the claim, that the property in the hands of the defendant, Barelli, should contribute only rateably with the rest of the real estate that ought to have been mortgaged — the defendant is entitled to more than that. He has a right to the benefit of his mortgage, as against his co-defendant, Mrs. Messervey. She purchased all the real estate, and mortgaged it all. Part was not included in her mortgage to Barelli, but remains as I understand in her own hands. She is directly the debtor, and this property should be first sold, and applied to the payment of plaintiffs’ demands. But if, as suggested, she had sold part of the property to a bona fide purchaser without notice, this could not deprive the plaintiffs of the right to be satisfied of the whole of their claims out of the property, in the hands of a purchaser with notice. For we cannot avoid agreeing with the presiding Chancellor, that Barelli was cognizant of the proceedings in equity; knew how every thing was arranged, and was the principal agent in making the arrangements.
The last ground is founded on a supposition, that the plaintiff, *has no case, and the infants not being properly made parties, the pggg bill must be dismissed. The infants were improperly made plain- L tiffs to the former bill for partition. Their interests were adversary to those of their co-defendant assuming to be their next friend. But if it were regular to do so, it would not benefit the defendants to vacate the proceedings as to them on that ground. They are properly plaintiffs to the present bill, for they have the cause of complaint. I do not say that they might not have sustained a bill by another friend, making their sister a defendant, and liable if they should fail to obtain satisfaction of the present defendants; but that is not the case before us. According to the view I have taken, she has a sufficient case, and right to relief. The infants are not formally and technically parties plaintiffs ; but the Court, if necessary, would permit that defect to be supplied. She has sued for herself, and in their behalf. It may be true, as argued by counsel, that none but a creditor or legatee, can sue on behalf of himself and others. But the objection must be taken in a proper time and manner.
The defendant’s demurrer to the bill, on which this question ought to have been made, has been overruled. He has answered to the bill of “ Sophia C. Messervey, for herself, and as a guardian ad litem of her brothers and sisters. ” He has taken no exception to this manner of suing by his answer, and must, therefore, be held to waive the objection.
The only modification which it appears necessary to make of the circuit decree is, that upon the coming in of the report upon the account *446 directed to be taken, the defendant, Sophia Messervey, pay to the plaintiffs,'respectively, what shall be found due to them on account of her administration of their father’s estate, and the sales of the personal estate; and that the Commissioner, or Master, do, in the first instance, sell all the real property purchased by the said Sophia Messervey, and mortgaged to the Commissioner in Equity, which was not mortgaged by her to the defendant, Joseph A. Barelli, but remains in her hands, and apply the proceeds towards the satisfaction of the plaintiffs’ claims on account of their share of the proceeds of their deceased father’s real estate; and that he then proceed to sell the property in the hands of the defendant, or so much thereof as be necessary for the satisfaction of the plaintiffs’ said claims, in pursuance of the directions of the decree; and it is ordered and decreed accordingly.
Chancellors Johnson and Johnston, concurred.